IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GE BUSINESS FINANCIAL SERVICES INC., formerly known as Merrill Lynch Business Financial Services Inc., | ) | |
| Plaintiff, | ) | Case No. 09 CV 4368 |
| v. | ) | Judge Samuel Der-Yeghiayan |
| ALAN T. SCHIFFMAN and WILLIAM PETER RIDGEWAY CROSS, | ) | Mag. Judge Arlander Keys |
| Defendants. | ) | |

**RESPONSE OF PLAINTIFF GE BUSINESS FINANCIAL SERVICES INC.
TO MOTIONS TO DISMISS BY DEFENDANTS
WILLIAM PETER RIDGEWAY CROSS AND ALAN T. SCHIFFMAN**

Plaintiff GE Business Financial Services Inc., formerly known as Merrill Lynch Business Financial Services Inc. ("GEBFS"), by its attorney, John H. Anderson of Seyfarth Shaw LLP, responds as follows to the motions of Defendant William Peter Ridgeway Cross ("Cross") and Alan T. Schiffman ("Schiffman") to dismiss the Complaint.

Cross and Schiffman have moved to dismiss the compliant herein, erroneously arguing that this proceeding is barred under the doctrine of *res judicata* because GEBFS had brought an earlier proceeding in Georgia for confirmation of a non-judicial foreclosure sale, and the Georgia court found that the property had not been sold for fair value.

Cross and Schiffman are wrong because:

1. The guaranty is governed by Illinois law because it contains Illinois choice of law and jurisdictional provisions.

2. Illinois law is very clear that guarantors can waive all defenses.

3. The guaranty by Cross and Schiffman waived all defenses, including *res judicata*.

4. *Arguendo,* in the absence of a waiver of the *res judicata* defense, Illinois law on *res judicata* does not bar an action against the guarantors, Cross and Schiffman.

5. The guaranty contains express language by which the guarantors waived the benefit of any anti-deficiency statutes or successive attempts to collect on the guaranty.

6. The Georgia court only decided that the price was not fair; it made no ruling on the guaranty and hence the Georgia ruling is not *res judicata* as to anything with respect to the guarantors. The Georgia ruling also does not affect the validity of the foreclosure sale, and GEBFS continues to hold title to the property pursuant to that foreclosure sale.

**The Georgia Proceeding**

On January 6, 2009, GEBFS conducted a non-judicial foreclosure sale of the mortgaged premises in Georgia, after notice. GEBFS was the only bidder at the sale, bidding $16,800,000.

On February 10, 2009, GEBFS filed a proceeding in Georgia under O.C.G.A. § 44-14-161 for confirmation of the sale. Although Schiffman and Cross were named as respondents, no relief was sought against them. (See Exhibit A to Plaintiffs' Motion, p. 7).

O.C.G.A. § 44-14-161 provides as follows:

> (a) When any real estate is sold on foreclosure, without legal process, and under power contained in security deeds, mortgages, or other lien contracts and at the sale the real estate does not bring the amount of the debt secured by the deed, mortgage, or contract, no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after the sale, report the sale to the judge of the superior court in which the land is located for confirmation and approval and shall obtain an order of confirmation and approval thereon.
>
> (b) The Court shall require evidence to show the true market value of the property sold under the powers and shall not confirm the sale unless it is satisfied that the property so sold brought its true market value on such foreclosure sale.
>
> (c) The court shall direct that a notice of the hearing shall be given to the debtor at least five days prior thereto; and at the hearing the court shall also pass upon the legality of the notice, advertisement, and regularity of the sale. The court may order a resale of the property for good cause shown.

In the proceeding brought by GEBFS, the Georgia court did not confirm the January 9th sale, ruling that "the $16,800,000.00 price obtained for the Property at foreclosure was less than the minimum true market value of the Property at that time." Although Cross and Schiffman were named as Defendants and participated in that hearing, the Georgia court did not make any findings or award any relief regarding them as guarantors. (See motions, Exhibit C).

## I. THE GEORGIA PROCEEDING IS NOT A BAR TO THIS ACTION BECAUSE THE GUARANTORS WAIVED ANY DEFENSES TO THIS ACTION

The guaranty is governed by Illinois law, which recognizes broad waivers of defenses in guaranties.

### A. This Action Is Governed By Illinois Law

GEBFS brought this lawsuit in Illinois against only the guarantors because the guaranty includes an express choice of forum provision, selecting state and federal courts in Chicago. Paragraph 9 of the Guaranty provides as follows:

> … WITH RESPECT TO ANY SUIT, ACTION OR PROCEEDINGS RELATING TO THIS GUARANTY (EACH, A "PROCEEDING"), LENDER (BY ITS ACCEPTANCE HEREOF) AND GUARANTOR IRREVOCABLY (A) SUBMIT TO THE NON-EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS HAVING JURISDICTION IN THE CITY OF CHICAGO, COUNTY OF COOK AND STATE OF ILLINOIS, AND (B) WAIVE ANY OBJECTION WHICH IT MAY HAVE AT ANY TIME TO THE LAYING OF VENUE OF ANY PROCEEDING BROUGHT IN ANY SUCH COURT, WAIVE ANY CLAIM THAT ANY PROCEEDING HAS BEEN BROUGHT IN AN INCONVENIENT FORUM AND FURTHER WAIVE THE RIGHT TO OBJECT, WITH RESPECT TO SUCH PROCEEDING, THAT SUCH COURT DOES NOT HAVE JURISDICTION OVER SUCH PARTY.

(Emphasis added).

The guaranty also contains an express choice of law provision in paragraph 17 selecting Illinois law as controlling. This paragraph provides:

> **THIS GUARANTY, THE NOTES, AND ALL OTHER INSTRUMENTS EVIDENCING AND SECURING THE LOAN SECURED HEREBY WERE NEGOTIATED IN THE STATE OF ILLINOIS, AND DELIVERED BY**

> **GUARANTOR OR BORROWER, AS APPLICABLE, AND ACCEPTED BY LENDER IN THE STATE OF ILLINOIS, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND THE UNDERLYING TRANSACTIONS EMBODIED HEREBY. IN ALL RESPECTS, INCLUDING, WITHOUT LIMITATION, MATTERS OF CONSTRUCTION OF THE IMPROVEMENTS AND PERFORMANCE OF THIS GUARANTY AND THE OBLIGATIONS ARISING HEREUNDER, THIS GUARANTY SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF ILLINOIS APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED IN SUCH STATE AND ANY APPLICABLE LAWS OF THE UNITED STATES OF AMERICA.**

(Emphasis added; bold capital typeface in original).

Illinois courts "generally uphold choice-of-law provisions in contracts," unless there is "an insufficient connection between the contract and the state designated by the parties." *Wilkes v. Accustaff*, 42 F. Supp. 2d 842, 844 (N.D. Ill. 1999). Here, the guaranty recites that the guaranty was negotiated in Illinois, and the guaranty acknowledges that "Illinois … has a substantial relationship to the parties and the underlying transactions embodied hereby" because Merrill Lynch made this loan out its Chicago office. GEBFS is also located in Chicago, Illinois.

In addition, Illinois courts will honor a contractual choice of law clause "provided that (1) it does not contravene a fundamental policy of Illinois, and (2) the state chosen bears a reasonable relationship to the parties or the transaction." *LaSalle Bank N.A. v. Paramount Properties*, 588 F. Supp. 2d 840, 849 (N.D. Ill. 2008); *ISC-Bunker Ramo Corp. v. Altech, Inc.*, 765 F. Supp. 1310, 1335 (N.D. Ill. 1990). As stated in *Vencor, Inc. v. Webb*, 33 F.3d 840, 844 (7th Cir. 1994), citing to an 1856 Illinois Supreme court case, "Illinois courts, which have long allowed parties to substitute the laws of another place or country, will enforce the substituted law where it is not dangerous, inconvenient, immoral, nor contrary to the public policy of Illinois." In their motions, Cross and Schiffman "implicitly agree" that Illinois law controls because they have argued Illinois law. *Kolson v. Vembu*, 869 F. Supp. 1315, 1320 (N.D. Ill. 1994).

**B. Illinois Law Allows Broad Waivers Of Defenses To Enforcement Of Guarantees**

Under Illinois law, guaranties are "contracts legally enforceable in accordance with their express provisions." *FIMSA, Inc. v. Unicorp Financial Corp.*, 759 F. Supp. 1297, 1300 (N.D. Ill. 1991). In *FIMSA*, the court went on to discuss Illinois treatment of waiver of defense clauses in guaranties, stating:

> … defendants may not legally pursue any defenses to FIMSA's otherwise valid claim against them, for they have specifically waived any right to do so. Each Guaranty provides (Rosenblum Guaranty 4; Unicorp Guaranty 4);
>
>> The undersigned waives the filing of a claim with a court in the event of receivership or bankruptcy of the Debtor, and waives every defense, counterclaim or setoff which the undersigned may now have or hereafter may have to any action by FIMSA in enforcing this guaranty, including, without limitation, every defense counterclaim or setoff which the undersigned may now have, or hereafter may have, against the debtor or any other party liable to FIMSA in any manner.
>
> Each Guaranty further contains this added express waiver (Rosenblum Guaranty 3; Unicorp Guaranty 3):
>
>> The undersigneds' liability hereunder shall in no way be affected, impaired, reduced or released by any of the following …, namely:
>>
>> (f) any act of commission or omission of any kind or at any time upon the part of FIMSA with respect to any matter whatsoever, other than the execution and delivery by FIMSA to the undersigned of an express written release or cancellation of this guaranty.
>
> As this Court's opinion in *BA Mortgage and International Realty Corp. v. American National Bank and Trust co. of Chicago*, 706 F. Supp. 1364, 1376 (N.D. Ill. 1989) (citation omitted) explained as to the enforceability of such waiver of defenses under Illinois law:
>
>> That principle applies with full vigor to waivers in a guaranty: When they are clear and unambiguous, Illinois courts consistently enforce them.
>>
>> Even the "obligation to act in a commercially reasonable manner" can be waived by language in a guaranty *Lincoln Park Federal Savings & Loan Association v. Carrane*, 192 Ill.App.3d 188, 192-93, 139 Ill.Dec. 251, 254-55, 548 N.E.2d 636, 639-40 (1st Dist. 19889).

> It is scarcely possible to imagine clearer language: Defendants have waived "every defense, counterclaim or setoff" (Rosenblum Guaranty 4; Unicorp Guaranty 4). And there is nothing to defendants' contention that their express waiver does not apply to such future occurrences as the alleged tortious interference-again that argument is defeated by specific language in the Guaranties ("waives every defense, counterclaim or setoff which the undersigned may now have *or hereafter may have*"), and the cases consistently enforce such language to bar post-guaranty defenses as well.

*Id.*, 759 F. Supp. at 1300-01 (footnote omitted, emphasis added)). *See also, Kolson v. Vembu*, 869 F. Supp. 1315, 1321 (N.D. Ill. 1994) (Illinois courts "routinely enforce" waivers of all defenses in guaranties); *Chemical Bank v. Paul*, 244 Ill. App. 3d 772, 781, 614 N.E.2d 436, 441 (1st Dist. 1993) ("Guaranty agreements containing waivers of all defenses, including the duty to act in a commercially reasonable manner, have been upheld as validly binding."); *Lincoln Park Federal Savings and Loan Assn. v. Carrane*, 192 Ill. App. 3d 188, 193, 548 N.E.2d 636, 640 (1st Dist. 1989) (waiver of requirement that the Bank act in a commercially reasonable manner); *BA Mortgage and Int'l. Realty Corp. v. American Nat'l. Bank and Trust Co. of Chicago*, 706 F. Supp. 1364, 1376 (N.D. Ill. 1989) (waiver of all defenses except prior payment).

Courts also recognize waiver of the *res judicata* defense.

> Just as a *res judicata* defense may be lost by failure of proper pleading, courts have expressed willingness to honor an express agreement between the parties that an action on one part of the claim will not preclude a second action on another part of the same claim) … . … And it is possible that parties to some forms of contractual arrangements may be able to foresee special claim preclusion problems and provide against them. The public interest is far better served by honoring such agreements than by short-sighted insistence on "efficient" litigation.

18 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2d § 4415, at pp. 354-55. (2d ed. 2005). (footnote omitted)

In short, broad waivers of all defenses in guaranties are enforceable under Illinois law.

### C. Any *Res Judicata* Defense Has Been Waived By The Guarantors

The Guaranty at issue in this case expressly waived any defense, including the *res judicata* defense raised by Cross. *See*, *FIMSA*, *supra*.

Under paragraph 3 of the Guaranty, the guarantors "agree[d] to refrain from asserting, until after repayment in full of the Loan, any defense … which Guarantor or Borrower may have against Lender or the holder of the Note." (Emphasis added). Paragraph 2 of the Guaranty by the Defendants also waived all defenses. It provides:

> In the event of any default by Borrower in the payment of the Indebtedness, after the expiration of any applicable cure or grace period, Guarantor agrees, on demand by Lender or any holder of the Note (which demand may be made concurrently with notice to Borrower that Borrower is in default of its obligations), to pay the Indebtedness regardless of any defense, right of set-off or claims which Borrower or Guarantor may have against Lender or the holder of the Note.

(Emphasis added). Paragraph 2 expressly states that the Guarantor will be obligated "regardless of any defense." Under Federal Rule 8(c)(1), *res judicata* is specifically listed as a "defense," which is therefore waived under paragraphs 2 and 3 of the Guaranty.

The guaranty also waived any defense arising out of successive proceedings by the lender until the indebtedness is paid in full. The Guarantors specifically acknowledged that they had agreed that GEBFS would have alternative remedies and that the choice of one remedy over another "may not prove to have been the best choice to maximize recovery by the Lender" and that the choice of one remedy over another shall not "be asserted as a defense" by the Guarantors in "any action [or] proceeding … seeking any other remedy." Further, the guaranty provides that the choice of one remedy shall not "preclude Lender from subsequently electing to exercise a different remedy," and that any choice of remedy by the Lender shall be deemed conclusively to have been made in good faith. Paragraph 2 of the Guaranty also states:

> All of the remedies set forth herein and/or provided for in any of the other Loan Documents or at law or equity shall be equally available to Lender, and the choice by Lender of one such alternative over another shall not be subject to question or challenge by Guarantor or any other person, nor shall any such choice be asserted as a defense, setoff, or failure to mitigate damages in any action, proceeding, or counteraction by Lender to recover or seeking any other remedy under this Guaranty, nor shall such choice preclude Lender from subsequently electing to exercise a different remedy. The parties have agreed to the alternative remedies provided herein in part because they recognize that the choice of remedies in the event of a default hereunder will necessarily be and should properly be a matter of good faith business judgment, which the passage of time and events may or may not prove to have been the best choice to maximize recovery by Lender at the lowest cost to Borrower and/or Guarantor. It is the intention of the parties that such good faith choice by Lender be given conclusive effect regardless of such subsequent developments.

(Emphasis added). Paragraph 2 expressly states that "the choice by Lender of one such alternative over another shall not … be asserted as a defense … in any action … by Lender to recover or seeking any other remedy under this Guaranty, nor shall such choice preclude Lender from subsequently electing to exercise a different remedy." The Guaranty also expressly references that GEBFS will have "alternative remedies."

Paragraph 4 of the Guaranty provides that "Guarantor shall remain liable for the payment of the Indebtedness, until the Indebtedness has been paid in full, notwithstanding any act or thing which might otherwise operate as a legal or equitable discharge of a surety." The Guarantors agreed they would remain liable notwithstanding the Georgia proceeding.

Paragraph 5 of the Guaranty provides:

> This is an absolute, present and continuing guaranty of payment and not of collection. Guarantor agrees that this Guaranty may be enforced by Lender without the necessity at any time of resorting to or exhausting any other security or collateral given in connection herewith or with the Note, Loan Agreement, Deed or any of the other Loan Documents through foreclosure or sale proceedings, as the case may be, under the Deed or otherwise, or resorting to any other guaranties, and Guarantor hereby waives any right to require Lender to join Borrower in any action brought hereunder or to commence any action against or obtain any judgment against Borrower or to pursue any other remedy or enforce any other right. Guarantor further agrees that nothing contained herein or otherwise shall prevent Lender from pursuing concurrently or successively all

> rights and remedies available to it at law and/or in equity or under the Note, Loan Agreement, Deed or any other Loan Documents, and the exercise of any of its rights or the completion of any of its remedies shall not constitute a discharge of Guarantor's obligations hereunder, it being the purpose and intent of Guarantor that the obligations of Guarantor hereunder shall be absolute, independent and unconditional under any and all circumstances whatsoever. None of Guarantor's obligations under this Guaranty or any remedy for the enforcement thereof shall be impaired, modified, changed or released in any manner whatsoever by any impairment, modification, change, release or limitation of the liability of Borrower under the Note, Loan Agreement, Deed or other Loan Documents or by reason of the bankruptcy of Borrower or by reason of any creditor or bankruptcy proceeding instituted by or against Borrower.
>
> * * *
>
> In the event of the foreclosure of the Deed and of a deficiency, Guarantor hereby promises and agrees forthwith to pay the amount of such deficiency up to, but not exceeding, the Indebtedness, notwithstanding the fact that recovery of said deficiency against Borrower would not be allowed by applicable law; however, the foregoing shall not be deemed to require that Lender institute foreclosure proceedings or otherwise resort to or exhaust any other collateral or security prior to or concurrently with enforcing this Guaranty.

(Emphasis added). Paragraph 5 therefore expressly provides that GEBFS can pursue "concurrently or successively all rights and remedies available to it," and that "the exercise of any of its rights or the completion of any of its remedies should not constitute a discharge of Guarantor's obligations hereunder."

Paragraph 9 of the Guaranty provides "NOTHING IN THIS GUARANTY SHALL PRECLUDE LENDER FROM BRINGING A PROCEEDING IN ANY OTHER JURISDICTION NOR WILL THE BRINGING OF A PROCEEDING IN ANY ONE OR MORE JURISDICTIONS PRECLUDE THE BRINGING OF A PROCEEDING IN ANY OTHER JURISDICTION." (Emphasis added). The Guaranty therefore clearly anticipates that multiple proceedings may be filed to enforce the guaranty.

Under paragraphs 2, 4, 5 and 9 of the Guaranty, Defendants Cross and Schiffman agreed that GEBFS could dispose of the secured property "on any terms" and "in any manner" "without

releasing, impairing, or affecting the liability of the Guarantor." This language tracks the "in any manner" language in the *FIMSA* guaranty, p. 4 *supra*, which was held sufficient to waive a defense similar to that proposed by Defendants.

The above-referenced provisions are very broad, and clearly serve as a waiver by Defendants Cross and Schiffman of the right to defend this action based upon a defense of *res judicata*.

### D. Even If Defendants Have Not Waived The Defense Of *Res Judicata*, The Georgia Proceeding Is Not *Res Judicata* Between The Lender And The Guarantors

Illinois law on *res judicata* is set forth in the case cited by Cross footnote 1 at page 6 of his memorandum, *Torcasso v. Standard Outdoor Sales, Inc.*, 157 Ill.2d 484, 490-91, 626 N.E.2d 225, 228 (1993), in which the court stated:

> Under the doctrine of *res judicata*, a final judgment rendered on the merits by a court of competent jurisdiction is conclusive as to the rights of the parties and their privies and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action. Where there is <u>identity</u> of parties, subject matter, and <u>cause of action</u>, the doctrine of *res judicata* extends not only to every matter that was actually determined in the prior suit but to every other matter that might have been raised and determined in it. A cause of action consists of a single group of facts giving the plaintiff a right to seek redress for a wrongful act or omission of the defendant. Although a single group of operative facts may give rise to the assertion of more than one kind of relief or more than one theory of recovery, assertions of different kinds or theories of relief arising out of a single group of operative facts constitute but a single cause of action. The test generally employed to determine the identity of causes of action for purposes of *res judicata* is whether the evidence needed to sustain the second action would have sustained the first. If the same facts are essential to maintain both proceedings or the same evidence is necessary to sustain the two, there is identity between the causes of action asserted, and *res judicata* bars the latter one. Identity of the cause of action may be determined from the record as well as from the pleadings in both causes. The burden of establishing *res judicata*, or estoppel by judgment is upon the party invoking it, and to operate as such it must either appear upon the fact of the record or be shown by extrinsic evidence that the precise question, or point, was raised in determining the former suit.

(Emphasis added).

Applying this standard, Illinois courts have consistently rejected as misplaced attempts to defend an action against a guarantor by arguing that a prior mortgage foreclosure action is *res judicata* of the action against the guarantor. Illinois courts have consistently found that a mortgage foreclosure action and a suit on a guaranty do not constitute the same cause of action for *res judicata* purposes. In *Freedom Mortgage Corp. v. Burnham Mortgage Inc.*, 2006 WL 695467 at *12 (N.D. Ill. March 13, 2006),[1] the court stated,

> The decisions substantially hinge on the fact that a guaranty is a "third contract," separate from the note and the mortgage, and that liability of guarantors is determined from the instrument of guaranty itself. *See*, *e.g.*, Du Quoin State Bank, 70 Ill.Dec. 874, 450 N.E.2d at 349. In *Du Quoin*, for example, the guaranty contract provided that "liability hereunder shall in no wise be affected or impaired by … any sale … or other disposition of any said indebtedness." *Id*. at 347. *Du Quoin* concluded that this language indicated that "the parties intended the guaranty to prevent the bank from suffering any actual loss in connection with its loans" without regard to any subsequent foreclosure sale. *Id*. at 349. In addition, at least one of the cases relies on the fact that an *in personam* judgment against a guaranty could not be obtained as part of an action based on a statutory short-form foreclosure complaint under the then-governing version of the IMFL. *See* Emerson, 352 N.E.2d at 50; *see also* 735 ILCS 5/15-1501(a) and (b)(5) (current version of the IMFL provides that guarantors are permissible, if not necessary, parties to a foreclosure proceeding).
>
> In the instant case, the Court is not holding that the Plaintiff is barred from pursing a carry-on fraud or contract action, to the extent one is otherwise maintainable in the law, because of the existence of a prior foreclosure suit such that *res judicata* is in play. (Such a claim at least putatively might be available to the Borrower–defendant - the Court takes no view-but none of them have moved for summary judgment so the Court does not pass on that question.) Instead, the Court is holding, consistent with the Second Circuit's decision in *Chrysler Capital* and the California appellate courts' decision referenced above, that Plaintiff is bound by the amount of its credit bid when seeking recovery for its claims against the Defendants, including the movant Defendants here.

---

[1] *See, Freedom Mortgage Corp. v. Burnham Mortgage, Inc.*, 569 F.3d 667, 671 (7th Cir. 2009) (adopting Judge Filip's ruling and explanation in 2006 WL 695467).

*Id*., 2006 WL 695467 at *12-13. In other words, a lender may be bound by its credit bid at a foreclosure sale, but the foreclosure action is not *res judicata* for purposes of a separate suit on a guaranty.

In *LP XXVI, LLC v. Goldstein*, 349 Ill. App. 3d 237, 240, 811 N.E.2d 286, 288-89 (2d Dist. 2004), basically the same arguments were made as are made here by Cross and Schiffman. In *LP XXVI*, collateral for a loan was foreclosed and a sheriff's sale held. The plaintiff in that action obtained a deficiency judgment. The plaintiff then assigned the note and a guaranty, and the assignee brought a second suit on the guaranty. The lower court dismissed the action against the guarantor, accepting the guarantor's argument that the second action was barred under the doctrine of *res judicata* or election of remedies. As in the instant action, the guarantor contended that the action on the guaranty could have been raised in the earlier foreclosure action.

The appellate court reversed, finding that the guarantor's rights under the guaranty were not placed in issue or adjudicated in the prior foreclosure action. The court specifically rejected the argument, as Cross and Schiffman make here, that the guaranty claim could have been raised in the earlier foreclosure action, finding that a suit on the guaranty could be pursued consecutively after the foreclosure action. The appellate court stated that the second action was "separate and distinct" from the earlier foreclosure action, and that *res judicata* was therefore inapplicable, saying "[t]his view is supported by well-settled precedent." *Id*., 349 Ill. App. 3d at 241, 811 N.E.2d at 289. The court continued, stating "foreclosure on the mortgage was chosen as the first action; thereafter, plaintiff was entitled to proceed upon the guaranty," and "a mortgage foreclosure has been held not to bar a subsequent suit on a guaranty." *Id*., 349 Ill. App. 3d at 242, 811 N.E.2d at 290. The court stated,

> These cases illustrate that a suit on a personal guaranty is expressly allowed where a previous mortgage foreclosure and sale resulted in a deficiency. In such a situation, *res judicata* will not bar the subsequent suit on the guaranty contract.
>
> Defendant attempts to distinguish the cases cited above, arguing that there the action on the guaranty was brought in the same proceeding as the foreclosure action. This, defendant asserts, is the "appropriate way to pursue the claims." Significantly, however, defendant does not offer, and our research has not uncovered, any authority stating that the failure to pursue an action on a guaranty contract concurrently with a foreclosure action will result in a later attempt to pursue the action on the guaranty contract being deemed to be barred by *res judicata*. In fact, the *Farmer City* court explicitly stated that "[t]hese remedies may be pursued consecutively or concurrently."

*Id*. Having reached this result, the court specifically did not address the plaintiff's other argument, as the one made by GEBFS here, that the guarantor had "contractually waived his ability to claim *res judicata* as a defense" to the second action.

In *Du Quoin State Bank v. Daulby*, 115 Ill. App. 3d 183, 185-86, 450 N.E.2d 347, 348-49 (5th Dist. 1983), the court ruled that a lender's action against a guarantor was not barred by a prior foreclosure action. The court noted that "[a]n action to recover from the guarantors of a note is separate from the remedy of foreclosure and sale," and that the guaranty specifically provided that it would not be affected or impaired by any sale or disposition of the collateral for the indebtedness. The same is true of the Guaranty by Cross and Schiffman which provides in paragraph 5 that the guarantor would not be discharged if GEBFS pursued its equitable remedy, *i.e.* foreclosure.

In *Emerson v. LaSalle National Bank*, 40 Ill. App. 3d 794, 799, 352 N.E.2d 45, 50 (2d Dist. 1976), the court stated:

> The action against guarantors of a note is separate from the remedy by foreclosure and sale. (*Berea College v. Killian*, 304 Ill.App. 296, 299-300, 26 N.E.2d 650 (1940).) The entry of a deficiency decree against a principal is not *res judicata* of the guarantor's liability. (*First Nat. Bank v. Marks*, 304 Ill.App. 438, 440-441, 26 N.E.2d 731 (190).)

In *Emerson*, the court found that the lender's foreclosure action did not bar an action by the lender against the guarantor. *Id*.

In *Citicorp Savings of Illinois v. Ascher*, 196 Ill. App. 3d 570, 554 N.E.2d 409 (1st Dist. 1990), a foreclosure sale was held and the court found a deficiency of $190,500. The court ruled that this judgment would not be *res judicata* as to the guarantors, stating

> The judgment of foreclosure was entered on count I of plaintiffs' complaint and provided that if there was a deficiency, plaintiffs would be entitled to a deficiency judgment against Oak Park Trust. The judgment, however, did not address defendants' liability for a deficiency based on their guaranty and for this reason, the doctrine of *res judicata* is inapplicable to the resolution of the issue in this case.

*Id*., 196 Ill. App. 3d at 574, 554 N.E.2d at 411.

In *First Nat. Bank of Chicago v. Marks*, 304 Ill. App. 438, 26 N.E.2d 731 (1st Dist. 1940), the court stated:

> In the instant case, the Marks are not co-markers of the note but guarantors of it. <u>They were made parties defendant to the foreclosure suit but it was not sought in that suit to hold them liable as guarantors or in any other manner.</u> As stated, the question of their guarantee was in no way mentioned. But defendants say the decree in the foreclosure suit adjudicated not only the matters involved in that suit but every other thing which might have been adjudicated in that proceeding. Counsel say that "Since the plaintiff in the foreclosure suit asked the court to find the person or persons personally liable for the debt and made the defendants herein defendants to its suit, the decree entered in the foreclosure suit was res adjudicate and a bar to plaintiff's suit." We think this contention cannot be sustained. Plaintiff made no attempt to hold them as guarantors. Moreover, the foreclosure suit was instituted before the Civil Practice Act became effective.

(Emphasis added). Similarly, in this matter, Cross and Schiffman were parties in the Georgia proceeding, but no relief was sought against them and the subject of their guaranty was not mentioned in the Georgia court's ruling. Under *Marks*, the Georgia proceeding is not a bar to this action.

Under Georgia law, Georgia's statutory confirmation proceeding is "extremely limited in scope." The "sole purpose" of the proceeding is to determine that the sale was properly

advertised and conducted and that the land brought its true market value. The confirmation court cannot consider issues between the parties that do not relate to "the value of the *land*, the amount that the *land* brought or the fairness of the procedures followed." *Walton Motor Sales, Inc. v. Ross*, 736 F.2d 1449, 1455 (11th Cir. 1984); *Wall v. Federal Land Bank of Columbia*, 240 Ga. 236, 236-37, 240 S.E.2d 76, 77 (1977); *Friedman v. Regions Bank*, 288 Ga. App. 57, 58, 653 S.E.2d 507, 509 (2007) (the purpose of O.C.G.A. § 44-14-161 "is to pass upon the notice, advertisement and regularity of the sale and to re-insure that the property was sold for a fair value"). This limited purpose and scope of the Georgia proceeding is reflected in the Georgia court's order, which simply found that, under Georgia law, the sale would not be confirmed because the court found that the mortgaged premises had not been sold for fair value. Therefore, under the Georgia statute, O.C.G.A. § 44-14-161, there could be no deficiency judgment against the debtor. The Georgia court made no findings or rulings against or in favor of the Guarantors Cross and Schiffman.

Under this authority, Illinois clearly recognizes that an action against guarantors is separate from the remedy of foreclosure and sale, such as the proceeding in Georgia, and that a ruling one way or another on a deficiency judgment against a debtor as part of a foreclosure action and sale is not *res judicata* of the guarantor's liability because the action on the guaranty is separate.

Moreover, under Illinois law, a low price alone is not a basis to deny confirmation of a foreclosure sale. Illinois law is different from Georgia law on this subject. In *Resolution Trust Corp. v. Holtzman*, 248 Ill. App. 3d 105, 113, 618 N.E.2d 418, 425 (1st Dist. 1993), cited by the lien claimants in their briefing on the motion to confirm the sale, the court stated that:

> ... courts consistently held that mere inadequacy of price was not a sufficient reason to disturb a judicial sale unless there were some other irregularities.

> Unless there was evidence of mistake, fraud or violation of duty by the officers conducting the sale, price alone would not be sufficient cause to set aside a sale. (See, e.g., Illini Federal Savings & Loan Association v. Doering (1987), 162 Ill.App.3d 768, 771-72, 114 Ill.Dec. 454, 516 N.E.2d 609 and cases cited therein.) This rule is premised on the policy which provides stability and permanency to judicial sales, and on the well-established acknowledgment that property does not bring its full value at forced sales and that the price depends on many circumstances for which the debtor must expect to suffer a loss. Illini Federal, 162 Ill.App.3d at 771-72, 114 Ill.Dec. 454, 516 N.E.2d 609.

(Emphasis added). *See also*, *Camp v. Wilson*, 71 B.R. 728, 729 (C.D. Ill. 1987) ("Under a firmly established principle of Illinois law, a mere inadequacy of price is not a sufficient cause of reversal [of a foreclosure sale] unless there is some evidence that appropriate procedures in the conduct of the sale were not followed."); *World Savings and Loan Assn. v. Amerus Bank*, 317 Ill. App. 3d 772, 780, 740 N.E.2d 466, 474 (lst Dist. 2000) ("in the absence of mistake, fraud or violation of duty by the officer conducting the sale, mere inadequacy of price is not a sufficient reason to disturb a judicial sale"); *Moeller v. Miller*, 315 Ill. 454, 459, 146 N.E. 449, 451 (1925) ("mere inadequacy of price will not justify a court in not confirming the sale and depriving the purchaser of the benefits of his bargain, unless the inadequacy is such as to amount to fraud"); *Strauss v. Anderson*, 366 Ill. 426, 431, 9 N.E.2d 205, 208 (1937) ("Sales . . . will ordinarily not be set aside because of inadequacy of price in the absence of proof of fraud or some irregularity in the sale.").

The reason for this rule is cited in *Uptown Federal Savings and Loan Assn. of Chicago v. Walsh*, 15 Ill. App. 3d 626, 305 N.E.2d 74 (1st Dist. 1973), where the court stated "'It has long been recognized that property does not bring its full value at forced sales.'" So, under Illinois law, the Georgia finding that the property was not sold at fair value is legally irrelevant to this suit against the Guarantors because the Illinois standard applicable to this separate cause of action is different.

**E. <u>This Action Is Not Barred By O.C.G.A. § 44-14-161</u>**

The guaranties upon which GEBFS relies in seeking judgment against Defendants Schiffman and Cross contain an express waiver of the provisions of the Georgia foreclosure confirmation statute, O.C.G.A. § 44-14-161. Paragraph 3(d) provides that the Guarantors "waive any and all rights a Guarantor may have under any anti-deficiency statute or other similar protections." *See also*, Paragraphs 5, page 8 *supra*.

In *United States v. Yates*, 774 F. Supp. 1368, 1375 (M.D. Ga. 1991), a case involving a deficiency action against a guarantor following foreclosure, the court recognized the "general rule" in Georgia that "a guarantor may waive the defenses which would be otherwise available to him," including waiver of a defense to a deficiency action under the Georgia foreclosure confirmation statute. The court then examined the wording of the guaranty which restricted the lender's power to foreclose on its real property collateral by prescribing that it was "to be exercised <u>only to the extent permitted by law</u>." *Id.* (emphasis added). Comparing that provision to one containing identical language in *United States v. Terrey*, 554 F.2d 685 (5th Cir. 1977), the *Yates* court agreed with the *Terrey* court that such language indicated the parties "intended to limit the creditor's discretion in disposing of the collateral and to apply [state] law … to the obligation that [the guarantor] owed … the [creditor]." *Yates*, 774 F. Supp. at 1375 (quoting *Terrey*, 554 F.2d at 693). Because of the limitation of the lender's foreclosure rights "to the extent permitted by law," the *Yates* court held that the guarantor's rights under the Georgia foreclosure confirmation statute had not been waived under the language of that guaranty.

In contrast, the *Yates* court cited the guaranty of *Vickers v. Chrysler Credit Corp.*, 158 Ga. App. 434, 280 S.E.2d 842 (1981), as an example of language sufficient to act as an express waiver of a defense afforded by Georgia personal property foreclosure law. *Id*., 774 F. Supp. at 1375. The *Vickers* guaranty gave the lender the right to proceed against the collateral "in any

manner" without affecting the guarantor's obligations. 158 Ga. App. at 438, 280 S.E.2d at 846. The *Yates* and *Vickers* courts recognized that such language in the *Vickers* guaranty served to waive the benefit of a Georgia statute that otherwise provided a defense in a deficiency action if the disposition of the collateral was not performed in a commercially reasonable manner. *Id.*, 774 F.Supp. at 1375; *Id.*, 158 Ga. App. at 438, 280 S.E.2d at 846.

The Defendants' Guaranty contains an express waiver of "any and all rights Guarantor may have under any anti-deficiency statute or other similar protections." (Guaranty, ¶ 3(d)). This language in the Guaranty constitutes a contractual waiver by Defendants of the Georgia foreclosure confirmation statute to the extent the statute even applies to Cross and Schiffman as guarantors instead of debtors. Plaintiff respectfully requests that this Court enforce this waiver by the Guarantors so that they cannot assert this statute as a defense by the Guarantors to this action.

The Georgia anti-deficiency statute is not a bar to any other attempt to collect a deficiency. In *Higgins v. IRS*, 403 B.R. 537, 541 (E.D. Tenn. 2009), the court stated that

> Georgia courts have allowed lenders to collect on debt remaining after a foreclosure sale by means other than a deficiency judgment, even when no confirmation of the sale was sought. *See, e.g., Worth v. First Nat'l Bank of Alma*, 175 Ga.App. 297, 333 S.E.2d 173, 174 (1985) (holder may satisfy the balance of a debt from a certificate of deposit even though section 44-14-161 barred holder from seeking efficiency judgment). If, as Appellants argue, the debt was "paid" when the lender failed to seek confirmation of the sale, there would be no reason to allow a lender to obtain payment of the remaining debt through other means.
>
> * * *
>
> The Court concludes that section 44-14-161 does not create a presumption that the proceeds of the foreclosure sale paid the entirety of the debt on the foreclosed property if the foreclosing party fails to have the sale judicially confirmed.

Finally, with respect to anti-deficiency statutes generally, *Interfirst Bank Clifton v. Fernandez*, 844 F.2d 279 (5th Cir. 1988), a Texas bank brought a deficiency action against a

Louisiana businessman, and the choice-of-law provision in the loan documents designated Texas law as controlling. The court found the Louisiana anti-deficiency statute (which does not allow a deficiency without an appraisement) did not apply because "Louisiana is without power to impose its law on foreclosure sales which take place with lawful jurisdiction and choice of law in another state." *Id.*, 844 F.2d at 286. The Louisiana statute also provided that it was the "public policy" of the state that the statute could not be waived by the debtor. *Id*. On rehearing, the court ruled that the Louisiana anti-deficiency statute "does not come into play" because of the choice-of-law provision. *Interfirst Bank Clifton v. Fernandez*, 853 F.2d 292, 294 (5th Cir. 1988).

In *Guardian Savings and Loan Assn. v. MD Associates*, 64 Cal. App. 4th 309, 75 Cal. Rptr. 2d 151 (1st Dist. 1988), the court found that a choice of law provision in a promissory note selecting Texas law was enforceable to permit the payee of the note to seek a deficiency judgment following a foreclosure sale. This ruling was entered despite a provision in the California anti-deficiency statute that it could not be waived.

Absent waiver, and in derogation of the common law, *Ameribank, N.A. v. Quattlebaum*, 269 Ga. 857, 859-60, 505 S.E.2d 476, 478 (1998); *Atlanta Empowerment Zone Corp. v. Light Energy Mgmt., Inc.*, 269 Ga. App. 728, 729, 605 S.E.2d 124, 125 (2004), the Georgia foreclosure confirmation statute, O.C.G.A. § 44-14-161, conditions the entry of a deficiency judgment against a debtor following the foreclosure sale of secured real property upon the superior court's confirmation that the price received at the foreclosure sale represented the true market value of the property. O.C.G.A. § 44-14-161. If the court does not confirm the sale, the debtor receives the statutory benefit of a release from its liability for a deficiency judgment. *Id.* However, this statutory benefit, like many other statutory rights, is contractually waivable and, in fact, was waived by Defendants in their subject Guaranty.

## II. GEBFS SHOULD BE ALLOWED A SUR-REPLY

At page 4 of his memorandum, Defendant Cross states:

> Plaintiff undoubtedly will assert this 'second bite' is somehow permitted under the terms of the payment guaranty, which was signed simultaneously with the loan. However, this 'interpretation' ignores the consequences of plaintiff's decision to select Georgia as its forum, the finality of the judgment of the Georgia court and the clear consequences of the Georgia statute.

(Emphasis added). Thus, Cross anticipated, as is the case, that GEBFS would rely on language of the Guaranty to support its filing of this second lawsuit. Yet, although Cross knew the wording of the Guaranty would be central to his motion to dismiss, he did not include in his motion or memorandum any discussion of his interpretation of that wording, effectively depriving GEBFS of any chance to respond to whatever argument he may make. GEBFS therefore requests leave to file a sur-reply if, in his reply, Cross addresses the language of the Guaranty. Otherwise, GEBFS would be deprived of any opportunity to respond to Cross' argument.

## Conclusion

Cross and Schiffman have tried to avoid their obligations as Guarantors by arguing that the Georgia proceeding is dispositive of their liability. However, this is contrary to the terms of their guaranty and to Illinois law on *res judicata* in this specific context. Their motions to dismiss should therefore be denied.

WHEREFORE, GEBFS respectfully requests the Court to deny that motions to dismiss by Defendants Cross and Schiffman, and for such further relief as the Court deems appropriate.

Respectfully submitted,

**GE BUSINESS FINANCIAL SERVICES INC.**

By: s/John H. Anderson
One of Its Attorneys

John H. Anderson
Seyfarth Shaw LLP
131 S. Dearborn Street, Suite 2400
Chicago, IL 60603
Ph: (312) 460-5000
Fax: (312) 460-7000

**CERTIFICATE OF SERVICE**

I, John H. Anderson, an attorney, do hereby certify that I have caused a true and correct copy of the foregoing **Response of Plaintiff GE Business Financial Services Inc. to Defendant William Peter Ridgeway Cross' Motion to Dismiss** to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filings to all attorneys of record on this 29th day of October, 2009.

s/John H. Anderson
John H. Anderson